IN THE UNITED STATES COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| GINA PACHECO, ET AL., | |
| Plaintiffs, | |
| v. | CIV. NO.: 10-1480(ADC/SCC) |
| PEDRO A. TOLEDO-DAVILA, ET AL., | |
| Defendants. | |

## REPORT AND RECOMMENDATION

Before the Court are two motions for summary judgment, one filed by Co-Defendants Pedro A. Toledo, Jimmy Cruz-Ortiz, Jorge D. Reyes-Quiñones, and Ricardo Cruz (collectively, "the Supervisory Defendants"), Docket No. 187, and another filed by the Municipality of Carolina, Docket No. 185. We recommend that the motions be granted.[1]

---

**1.** Plaintiffs suggest that we should not consider the Supervisory Defendants' motion because "the issues have already been before this

## I.  Summary Judgment Standard

A motion for summary judgment will be granted "if the pleadings, the discovery and disclosure material on file, and any affidavits show that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is in genuine dispute if it could be resolved in favor of either party, and it is material if it potentially affects the outcome of the case. *Calero-Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 19 (1st Cir. 2004).

The movant carries the burden of establishing that there is no genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). This burden may be satisfied by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations . . . or other materials." FED. R. CIV. P. 56(c)(1)(A). The movant may also point to a lack

---

Court and have been decided." Docket No. 196, at 2. The two orders that Plaintiffs point to, however, decided (and rejected) motions to dismiss, *not* motions for summary judgment. *See* Docket Nos. 34, 181. Of course, the procedural posture is much different at this point, and the Supervisory Defendants are entitled to have their motion for summary judgment considered in spite of the rejection of their motions to dismiss.

of evidence supporting the nonmovant's case. *See* FED. R. CIV. P. 56(c)(1)(B); *see also Celotex*, 477 U.S. at 325. Once the movant makes a preliminary showing that no genuine issues of material fact exist, "the nonmovant must produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy [dispute]." *Clifford v. Barnhart*, 449 F.3d 276, 280 (1st Cir. 2006) (internal quotation marks omitted); *see also* FED. R. CIV. P. 56(c)(1).

In evaluating a motion for summary judgment, we view the record in the light most favorable to the nonmovant. *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150-51 (2000). "The court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3).

## II. Analysis

In May 2008, Elis Manuel Andrades-Tellería was pulled over by a marked Police of Puerto Rico ("POPR") vehicle and detained by Defendant POPR Officer Osvaldo Hernández-Adorno. Officer Hernández was accompanied by various persons impersonating federal agents, including Defendant POPR Sgt. Noel Rosario-Colón. Andrades was purportedly arrested, and he was placed in a vehicle owned by Defendant Carolina Municipal Police ("CMP") Officer Daniel Cruz-

Andino. Andrades was driven away and later murdered, and his body was dumped by a rural road. Defendants Hernández, Rosario, and Cruz-Andino are currently serving prison sentences for crimes related to their roles in Andrades's death.

This lawsuit was brought by the heirs and relatives of Andrades against the line officers who played a role in his death, their supervisors, and the Municipality of Carolina. The line officers are all in default. *See* Docket No. 39 (entry of default against Defendants Cruz-Andino and Hernández), Docket No. 180 (entry of default against Defendant Rosario). The motions for summary judgment under consideration here were filed by the Supervisory Defendants and the Municipality of Carolina, all of whom are alleged to be responsible for damages because of their failures to train and supervise the POPR and CMP line officer defendants.

### A.  Legal Context

A section 1983 claim, like the one before us, has two basic elements: first, the defendant must have acted under the color of state law; and second, the defendant's conduct must have deprived the plaintiff of his constitutional rights. *Gagliardi v. Sullivan*, 513 F.3d 301, 306 (1st Cir. 2008). Here, neither the Supervisory Defendants nor the municipality can dispute that

they were acting under the color of state law. *See, e.g., Gibson v. City of Chicago*, 910 F.2d 1510, 1519–20 (7th Cir. 1990) (holding that in a § 1983 case against a municipality, "the municipality itself is the state actor"). As to the second element, it is well-settled that neither a supervisor nor a municipality can be liable for the conduct of subordinates or employees under a theory of *respondeat superior*. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (holding that *respondeat superior* authority is not available in suits against supervisors for the actions of their subordinates); *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 691 (1978) (holding that "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory"). Instead, a supervisor may only be held liable for his "own acts or omissions." *Whitfield v. Melendez-Rivera*, 431 F.3d 1, 14 (1st Cir. 2005). Similarly, a municipality may only be held liable when the constitutional violation "occurred as a result of the municipality's 'policy or custom.'" *Freeman v. Town of Hudson*, 714 F.3d 29, 38 (1st Cir. 2013) (quoting *Monell*, 436 U.S. at 694). Thus, to satisfy the second element of § 1983 liability, a plaintiff must prove an "affirmative link" between the violation of the plaintiff's rights and the supervisor's or municipality's conduct, such that the conduct could be charac-

terized as deliberately indifferent to the rights of citizens. *Piñeda v. Toomey*, 533 F.3d 50, 54 (1st Cir. 2008) (holding that for supervisory liability, deliberate indifference, in the form of the supervisor's "encourage[ment], condon[ing], or acquiesce[nce]" in the line officer's conduct must be shown); *Gaudrealt v. Municipality of San Juan*, 923 F.2d 203, 209 (1st Cir. 1990) ("In order to establish municipal liability, the plaintiff must show that the acts or omissions of the municipality's policymakers evidence deliberate indifference to the rights of its inhabitants." (internal quotations omitted)).

A showing of deliberate indifference requires proof of several elements: (1) "a grave risk of harm"; (2) "the defendant's actual or constructive knowledge of that risk"; and (3) the defendant's "failure to take easily available measure to address that risk." *Camilo-Robles v. Hoyos*, 151 F.3d 1, 7 (1st Cir. 1998). The cases "reveal[] two overarching theories sufficient to impose liability." *Ramirez-Lluveras v. Pagan-Cruz*, 833 F. Supp. 2d 165, 174 (D.P.R. 2011). The first is where the supervisors or municipality are shown to have formulated a policy or custom that leads to a constitutional violation; the second is where the supervisor or municipality knows of but disregards a subordinate's or employee's risk of committing constitutional

violations. *Id.* (noting that supervisory liability has tended to be found "where the supervisor knows of but disregards a subordinate's risk of constitutional violations"); *Young v. City of Providence*, 404 F.3d 4, 28 (1st Cir. 2005) ("A finding of deliberate indifference requires . . . that the City have disregarded a known or obvious risk of serious harm . . . ."). Plaintiffs here claim that the Supervisory Defendants and the Municipality of Carolina are liable because of their disregard of the known risks posed by their officers and because of their failure to properly train those same officers.

## B. Risk and Knowledge

### 1. POPR Sgt. Noel Rosario-Colón

Two POPR line officers participated in the conduct leading to Andrades's death: Sgt. Rosario and Officer Hernandez. Looking first to Sgt. Rosario, it is uncontested that, on the day of Andrades's murder, he was suspended from his position with the POPR.[2] SUPERVISORY DEFENDANTS' STATEMENT OF UNCONT

---

2.  Plaintiff purports to admit these facts "only as to [what] the documents say." *See, e.g.*, PLAINTIFFS' RESPONSE TO SUPERVISORY DEFENDANTS' SUMF, ¶ 66. By this, we assume they mean not to admit the truth of the matter asserted, only that certain documents state those facts. However, because Plaintiffs' statement fails to support its denial of the underlying facts with any citations to the record, these facts are treated as admitted

ESTED MATERIAL FACTS ("SUPERVISORY DEFENDANTS' SUMF"),
Docket No. 188, ¶¶ 66–68; PLAINTIFFS' RESPONSE TO SUPERVI-
SORY DEFENDANTS' STATEMENT OF UNCONTESTED FACTS
("PLAINTIFFS' RESPONSE TO SUPERVISORY DEFENDANTS' SUMF"),
Docket No. 197, ¶¶ 66–68. Sgt. Rosario was dismissed from the
POPR on May 12, 2008, after Andrades's murder. SUPERVISORY
DEFENDANTS' SUMF, ¶ 69; PLAINTIFFS' RESPONSE TO SUPERVI-
SORY DEFENDANTS' SUMF, ¶ 69.

Based on the fact of Sgt. Rosario's suspension, the Supervi-
sory Defendants argue that they cannot be held liable for any
injuries arising from Sgt. Rosario's actions because he was not
acting under the color of state law at the time Andrades was
stopped or killed. Supervisory Defendants present no case law
in support of their position that a suspended officer cannot act
under color of state law; instead, they state that because he was
not authorized to act on behalf of POPR at the time of Andrad-
es's killing, he cannot have been acting under color of state
law. Plaintiffs' response is no more helpful. Again citing no
cases, they argue that because Sgt. Rosario had not yet been
terminated from his employment, and because he was acting

---

in full. *See* LOC. CIV. R. 56(c); FED. R. CIV. P. 56(e)(2).

as an officer of the law, he must have been acting under color of state law.

Our own research shows that the Supervisory Defendants are correct. The seminal case on this point is *Gibson v. City of Chicago*, 910 F.2d 1510 (7th Cir. 1990). In *Gibson*, plaintiff was shot and killed by a Chicago police officer during an altercation in their neighborhood. *See id.* at 1512–13. For reasons that are not clear, the officer "identified himself as a police officer, drew his gun, informed [the plaintiff] that he was under arrest, and then fatally shot [the plaintiff] in the chest." *Id.* at 1513. However, at the time of this incident, the officer was on the Chicago Police's medical roll, as he had been declared mentally unfit for duty. *See id.* at 1512. Though the officer continued to receive salary and benefits, he had been expressly prohibited from carrying his gun or from exercising any police powers. *See id.* The Seventh Circuit affirmed the trial court's conclusion that the officer had not been acting under the color of state law when he shot the plaintiff. Finding that the officer was like a suspended officer, "stripped of all power to perform police duties," the court concluded that he could not have been acting under the color of state law because "one cannot misuse power that one no longer possesses." *Id.* at 1517–18. Thus, the com-

plaint against the officer had been properly dismissed by the trial court. *Id.* at 1519; *see also Wilson v. Price*, 624 F.3d 389, 393 (7th Cir. 2010) ("When officials possess no authority to act, we have found that their conduct is outside the ambit of § 1983."); *Nelson v. Vastine*, No. 89-5358, 1991 WL 78180, *2 (N.D. Ill. May 6, 1991) ("[A]n officer whose authority has been revoked cannot be acting under color of state law.").

Here, Sgt. Rosario, at the time of Andrades's murder, had been summarily suspended from his position with the POPR. He, like the officer in Gibson, thus lacked the authority to use any police power, much less *misuse* it. As such, he was not acting under color of state law, and his actions cannot form the basis for the Supervisory Defendants' liability.[3]

---

3.  In *Gibson*, the court, though it dismissed the cause of action against the line officer on "color of law" grounds, it reversed the district court's grant of summary judgment against the municipality. *Gibson v. City of Chicago*, 910 F.2d 1510, 1519–20 (7th Cir. 1990). It reversed, however, because the plaintiff's theory of municipal liability was premised on a municipal policy claim, not a failure to supervise. *See id.* As to the policy claim, the court correctly held that "the municipality itself is the state actor," and there was therefore no "color of law" problem with regard to the municipality. *Id.* The matter is discussed in more detail below, but, among other problems, Plaintiffs never make a policy-type claim that effectively explains how the supposed policy could have actually prevented Sgt. Rosario from committing the crime against Andrades given that Sgt. Rosario had already essentially been removed

## 2.  POPR Officer Osvaldo Hernández-Adorno

In order to characterize the Supervisory Defendants as "deliberately indifferent," and therefore liable here, there must be facts sufficient such that it "would be manifest to any reasonable official that his [subordinate's] conduct was very likely to violate an individual's constitutional rights." *Hegarty v. Somerset Cnty.*, 53 F.3d 1367, 1380 (1st Cir. 1995). So we must look at whether the field officer's "reasonably observable characteristics, behavior or conduct indicated an abnormally high likelihood that he posed a threat to violate the constitutional rights of citizens *in the manner alleged*." *Sanchez v. Figueroa*, 996 F. Supp. 143, 148–49 (D.P.R. 1998) (emphasis added).

Here, Officer Hernández used his official vehicle to perform an illegal, warrantless stop and arrest of Andrades. However, Plaintiffs fail to raise an issue of material fact that Hernández

---

from the POPR; thus, the claim would fail because no issue of material fact exists as to whether there was an "affirmative link" between the policy and the harm. *See Bordanaro v. McLeod*, 871 F.2d 1151, 1157 (1st Cir. 1989) (quoting *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 & n.8 (1985) ("At the very least, there must be an affirmative link between the policy and the particular constitutional violation alleged.")).

posed a grave risk of violating citizens' rights in this manner. Plaintiffs put forth Hernández's disciplinary record. *See* PLAINTIFFS' STATEMENT OF UNCONTESTED MATERIAL FACTS ("PLAINTIFFS' SUMF"), Docket No. 196-1, ¶ 18. That record contains no complaints for conduct similar to Hernández's conduct with respect to Andrades; moreover, except for two incidents, all of the complaints took place more than ten years before the facts giving rise to this case. *See id.* Plaintiffs give most of their own attention to a complaint against Hernández concerning two bank robberies that he was accused of committing in 1990. *See id.* ¶ 19. For these alleged actions, Hernández was summarily suspended from work and salary. *See id.* ¶ 20. The problem with Plaintiff's theory is that the very exhibits that Plaintiffs rely on show that Hernández "ha[d] been exonerated from the criminal charges filed against" him. Docket No. 202-3. Ignoring the issue of whether a bank robbery is sufficiently similar to the conduct in this case to have put the supervisors on notice of Hernández's dangerous, the fact is that the alleged bank robbery cannot be a factor in finding Hernández dangerous if he was exonerated. Plaintiffs point to nothing suggesting that the exoneration was incorrect, much less that the Supervisory Defendants knew of its falseness.

Plaintiffs point to nothing else suggesting that Hernández was a danger. Instead, they make arguments about the deficiencies of his disciplinary record, which they say contains various errors. Whatever the truth of this belief may be—and the U.S. Department of Justice, at least, thinks such concerns are, as a general matter, well founded—the fact is that no reasonable jury could find that Hernández was a risk without actual evidence pointing in that direction. And Plaintiffs have no such evidence at all.[4] As such, we are forced to conclude that, before the facts giving rise to this case, no issue of material fact existed as to Hernández's risk of violating a citizen's constitutional rights in the manner alleged in the complaint. On this basis, summary judgment must be granted in favor of the Supervisory Defendants.

### 3.  CMP Officer Daniel Cruz-Andino

Officer Daniel Cruz-Andino, a member of the Carolina Municipal Police, also participated in the crimes against Andrades. The municipality attempts to argue that Cruz-

---

**4.**  And even if they did, the fact that it wasn't in his disciplinary record would make it more difficult to charge the Supervisory Defendants with constructive knowledge. Thus, they would need to bring actual evidence showing the Supervisory Defendants' knowledge, something they have also failed to do.

Andino was not acting under color of law when he partici-
pated in these actions, becuase Cruz-Andino did not partici-
pate in the illegal stop of Andrades and arrest of Andrades,
and because he was not on duty at the time of the events
giving rise to this case. We reject this argument, however,
concluding that there exists a question of fact as to whether
Cruz-Andino was acting under color of law. Even if he was off
duty, as the municipality suggests, Cruz-Andino is alleged to
have directly participated in Andrades's detention: after being
pulled over by a marked vehicle, Andrades was allegedly
placed in the back of a vehicle owned and driven by Cruz-
Andino—the same vehicle in which Andrades is alleged to
have been later murdered. AMENDED COMPLAINT, Docket No.
129, ¶ 17. This fact, were it true, would imply that Cruz-
Andino was at the scene of the "arrest," aiding and abetting
Hernández-Adorno, and we therefore think Cruz-Andino's
participation would have been under color of state law.
Nothing in the municipality's motion forces us to conclude that
the facts are otherwise. Therefore, we reject the municipality's
argument on this ground.

    That issue out of the way, the facts and analysis with
respect to CMP Officer Cruz-Andino largely mirror our

discussion of POPR Officer Hernández-Adorno, above. Cruz-Andino joined the CMP on March 2, 1998. DEFENDANT MUNICI-PALITY OF CAROLINA'S STATEMENT OF UNCONTESTED MATERIAL FACTS ("CAROLINA'S SUMF"), Docket No. 185-1, ¶ 2; PLAIN-TIFFS' RESPONSE TO THE MUNICIPALITY OF CAROLINA'S STATE-MENT OF UNCONTESTED MATERIAL FACTS ("PLAINTIFFS' RE-SPONSE TO CAROLINA'S SUMF"), Docket No. 198-2, ¶ 2. The municipality attached as an exhibit to its statement of uncon-tested facts a chart compiling what it says is all of the com-plaints filed against Cruz-Andino during his service, along with the determination made in each case. *See* Docket No. 185-5. Based in part on this document, the municipality states that it investigated all of the charges against Cruz-Andino, and, of those that were sustained, none concerned violations of civil rights, especially of the sort at issue in the complaint. *See* CAROLINA'S SUMF, ¶¶ 6–11.[5] Of the complaints against Cruz-

---

5.    Plaintiffs purport to deny the municipality's proposed uncontested fact that *all* of the complaints against Cruz-Andino are included in the chart, that discipline was imposed as required, and that none of the complaints relate to civil rights violations. *See* PLAINTIFFS' RESPONSE TO CAROLINA'S SUMF, ¶¶ 9–11. The sole basis for these denials is an objection to the evidence used by the municipality to support its proposed facts. *See id.* Plaintiffs make three objections to the municipality's complaint chart, though none is elaborated on beyond

Andino listed in the chart, the only ones that were both sustained and might have involved civil rights violations were committed *after* the conduct that gave rise to this case.[6] *See*

Plaintiffs' simple assertion, and we would accordingly deem each objection waived. In any case, the document is a summary of the items in Cruz-Andino's grievance file, *see* Docket No. 217, at 1–2, and its veracity is attested to by the commissioner of the municipality's police department, *see* Docket No. 185-2. Moreover, the documents on which it was based *were* apparently provided to Plaintiffs, who themselves failed to request that the entire file be copied. *See* Docket No. 217, at 2. Thus, Plaintiffs' undeveloped objections to the document's admissibility are denied.

6.   Along with their opposition to the municipality's motion for summary judgment, Plaintiffs filed their own statement of uncontested material facts. *See* Docket No. 198-1. The statement was never opposed, but we will not adopt its "facts," some of which are in fact legal conclusions. *See, e.g., id.* ¶ 1 ("The Municipality of Carolina did not adopt policies that ensured adequate screening, training and supervision protocols as evidenced in the repeatedly unchecked and inadequately disciplined conduct incurred by Daniel Cruz Andino."). The others, such as that Cruz-Andino was disciplined and committed various violations, are apparent from the municipality's own submissions. The only newly proposed fact is that after Cruz-Andino's probationary employment period, he was "recommended to continue in the force despite the fact that he had failed the item regarding his voluntary association with situations contrary to the public policy, law and morality." *Id.* ¶ 3. However, we will not adopt this fact, because the document on which it was based was filed in the Spanish language, and no translation was ever submitted. *See* Docket No. 199 (requesting a period of time to file translations); Docket No. 202 (submitting various translations, but not of the exhibit discussed here). Thus, the demands of Local Civil Rules

Docket No. 185-5.

Cruz-Andino participated in an illegal, warrantless stop and arrest of Andrades, which led to Andrades's murder. However, Plaintiffs fail to raise an issue of material fact as to whether Cruz-Andino posed a grave risk of violating citizens' rights in this manner. The disciplinary record simply contains no substantiated complaints of behavior remotely similar to that at issue here, and Plaintiffs point to nothing else. As such, we are forced to conclude that no issue of material fact exists as to Cruz-Andino's risk of violating a citizen's constitutional rights in the manner alleged in the complaint.[7] Plaintiffs therefore cannot show deliberate indifference on the part of the municipality, and summary judgment on this ground must be

---

5(g) and 56.

**7.** Even if we accepted Plaintiffs' proposed fact discussed above, *see supra* note 6, our conclusion would not change. That one reference, which points to no specific conduct, and was moreover remote in time, would not be sufficient to support a specific finding that Cruz-Andino "posed a threat to violate the constitutional rights of citizens *in the manner alleged*." *Sanchez v. Figueroa*, 996 F. Supp. 143, 148–49 (D.P.R. 1998) (emphasis added). Likewise, if the municipality's propsed facts regarding Cruz-Andino's disciplinary record were not admitted, Plaintiffs would still be unable to point to *any* evidence showing that Cruz-Andino was a risk in the relevant sense.

granted.

### C.  Failure to Train

Plaintiffs also allege that the Supervisory Defendants and the municipality are liable for their failures to adequately train Hernández and Cruz-Andino. The First Circuit, however, has explained that "the liability criteria for 'failure to train' claims are exceptionally stringent." *Hayden v. Grayson*, 134 F.3d 449, 456 (1st Cir. 1998). Liability requires a conscious or deliberately indifferent policy towards "the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388–89 (1989).

Here, the uncontested facts make clear that the POPR had a policy of training its officers in how to make constitutional arrests, and on the importance of individuals' constitutional rights more generally. SUPERVISORY DEFENDANTS' SUMF, ¶¶ 36–46; PLAINTIFFS' RESPONSE TO SUPERVISORY DEFENDANTS' SUMF, ¶¶ 36–46. Moreover, Plaintiffs' own cross-motion for summary judgment pins liability entirely on the failure of Hernández and his partner, Juan Ramirez-Padilla, to follow procedures, which, Plaintiffs say, raises questions about "the adequacy of the training." Docket No. 196, at 17. The problem with this theory, however, is the Supreme Court's explicit

direction that the fact that "a particular officer may be unsatis-
factorily trained will not alone suffice to fasten liability" on the
supervisors. *City of Canton*, 489 U.S. at 390. Much more is
required than evidence of "faulty" or "negligently adminis-
tered" training program. *Id.* at 391. There must be evidence of
the supervisors' deliberate indifference or conscious choice,
and of that, there is nothing.[8] Thus, summary judgment must
also be granted in favor of the Supervisory Defendants on
Plaintiffs' failure to train claims.[9]

---

**8.**  Moreover, Plaintiffs would also fail to prove that the "deficiency in
training," whatever it was, "actually caused" the violation of
Andrades's constitutional rights. *City of Canton v. Harris*, 489 U.S. 378,
391 (1989). Officer Hernández *was* trained in proper arrest procedure,
and he still committed the crime against Andrades. Plaintiffs proffer
absolutely nothing to suggest that more or better training would have
prevented Hernández's apparently deliberate decision to commit a
crime. And as to any failure to supervise claim with respect to Sgt.
Rosario, it would necessarily fail because, as we conclude above, Sgt.
Rosario's crimes against Andrades were perpetrated at a time when he
had none of the powers of a police officer; whether he was trained
correctly as a police officer is, therefore, irrelevant.

**9.**  Likewise, we would grant summary judgment in favor of the
Supervisory Plaintiffs with regard to Plaintiffs' claim that the POPR's
policies for disciplining officers was broken, leading to the violation of
Andrades's rights. First of all, this claim seems primarily directed
towards the actions of Sgt. Rosario, who, as we have said, was not
acting under the color of state law. Second, there is again nothing

Similarly, the facts show that the Carolina Police Department had a policy of giving various trainings to its officers—trainings that Cruz-Andino attended. *See* CAROLINA'S SUMF, ¶¶ 3–4; PLAINTIFFS' RESPONSE TO CAROLINA'S SUMF, ¶¶ 3–4. Moreover, the department promulgated rules and regulations regarding the proper conduct of its officers. CAROLINA'S SUMF, ¶ 6; PLAINTIFFS' RESPONSE TO CAROLINA'S SUMF, ¶ 6. Plaintiffs make reservations about the adequacy of these trainings and regulations, PLAINTIFFS' RESPONSE TO CAROLINA'S SUMF, ¶¶ 3–4, 6, but they offer absolutely no evidence in support of these doubts. As we noted above, however, there must be evidence of the municipality's deliberate indifference or conscious choice, and Plaintiffs give us nothing on that score.

No reasonable jury could find that the municipality was deliberately indifferent with regard to the content or administration of its officer training; as such, summary judgment must be granted in favor of the municipality on this claim.

### III.   Conclusion

----

proffered by Plaintiffs suggesting deliberate indifference, as opposed to negligence or mere inadequacy, nor is there anything linking the alleged failures to the crime committed against Andrades.

For all of the reasons stated above, we RECOMMEND that the motions for summary judgment, Docket Nos. 185, 187, be GRANTED, and that all claims against the municipality and the Supervisory Defendants be DISMISSED WITH PREJU-DICE.[10]

IT IS SO RECOMMENDED.

The parties have fourteen days to file any objections to this report and recommendation. Failure to file the same within the specified time waives the right to appeal this report and recommendation. *Henley Drilling Co. v. McGee*, 36 F.3d 143, 150-51 (1st Cir. 1994); *United States v. Valencia-Copete*, 792 F.2d 4 (1st

---

**10.** Plaintiffs filed a hybrid opposition to the Supervisory Defendants' motion for summary judgment and cross-motion for summary judgment. Docket No. 196. The Supervisory Defendants moved to strike this cross-motion on the grounds that it was filed after the Court's dispositive motion deadline. Docket No. 205. However, we RECOMMEND that the motion to strike be DENIED, as the Local Rules clearly contemplate Plaintiffs' right to file their own statement of uncontested facts, LOC. CIV. R. 56(c); if those facts were in fact uncontested and established the Supervisory Defendants' liability, we would be well within our power to recommend the entry of summary judgment for Plaintiffs, *see* FED. R. CIV. P. 56(f). However, Plaintiffs' cross-motion is patently insufficient to establish the Supervisory Defendants' liability, not only for all of the reasons stated in this opinion, but also because it asks to draw any number of questionable inferences in Plaintiffs' favor, something we cannot do. Accordingly, we RECOMMEND that the cross-motion also be DENIED.

Cir. 1986).

    In San Juan, Puerto Rico, this 19th day of July, 2013.

              <u>S/ SILVIA CARREÑO-COLL</u>

              UNITED STATES MAGISTRATE JUDGE